On behalf of the applicant, Mr. Joe Guattari, on behalf of the appellee, Mr. Robert Shanks. Mr. Guattari. Good morning. May it please the Court. My name is Joel Guattari, and I represent the appellants, Precision Dose, Inc., Frank Darnell, James Kleinheins, and Robert Koopman. Your Honors, there are two issues before you this morning on appeal. The first, did the trial court err in striking the Koopman affidavit, which was submitted in support of the insurance motion for summary judgment concerning Pekin's duty to defend? The second issue is whether the trial court erred in determining that Pekin owed no duty to defend, such that it granted Pekin's motion for summary judgment on their defense obligation. For reasons that I hope to make clear this morning, I will be requesting that the appellate court reverse the trial court's opinion dated February 3, 2011, which struck the Koopman affidavit and granted Pekin's motion for summary judgment on the duty to defend issue. With respect to the first issue, the court erred in striking the Koopman affidavit. Now, I'm going to give you a little bit of background, but I'm going to presume a familiarity with the facts as they were filled out by opposing counsel, who, in his brief, did an admirable job of filling in a few details that were inadvertently omitted from our version of the facts. So, as you're aware, Your Honors, the parties have filed cross motions for summary judgment in a declaratory judgment action concerning Pekin's duty to defend. The insurance supported their motion for summary judgment with an affidavit by Mr. Robert Koopman. That affidavit was provided to flesh out ambiguities in the underlying pleading. Specifically, Mr. Koopman swore in his affidavit to the particular facts... By the underlying pleading, you mean the complaint? Yes. Not the declaratory judgment complaint, but the complaint relating to liability for breach of fiduciary duty. That's right. The original underlying complaint included additional counts. It was subsequently amended to focus solely on breach of fiduciary duty allegations against my clients. The affidavit provided by Mr. Koopman explained what it meant where the underlying complaints, both the original and the amended, implied that precision dose assumed the operations of exact dose. That allegation is what brings us here today, essentially, because assuming the operations was not fled in any great degree of detail. I thought the complaint said assume the operations of the physical plant, not just assume the operations of the business. I thought the complaint was specific that it assumed the operations of the plant. I believe the original underlying complaint had words to that effect. I believe it called the facility perhaps. But I believe the amended underlying complaint used broader language that it assumed the operations more generally. I stand corrected. The amended complaint pleads that precision dose began assuming operations of the exact dose packaging factory, whereas the original complaint says precision dose began assuming operations of the exact dose slash progressive lane packaging factory, essentially the same thing. So by this affidavit expanding, you're saying it's clarifying an ambiguity, but isn't it actually broadening the allegations of the complaint itself? I don't believe so, Your Honor, because looking at the language that was used in the pleading, assume the operations of the facility or the factory or whatever the language was, it's still questionable as to what that means, what the scope of that was. What exactly did that entail, assuming the operations of the? I guess my problem with this argument is the philosophical aspect of Mr. Koopman filing an affidavit relating to what his interpretation of what the complaint says. Is that a question of the trial court's interpretation? And isn't it essentially a conclusion of law? Because if you're adding facts, then we're not we're no longer looking at the complaint. We're looking at the complaint plus. And that's absolutely legitimate under Illinois law. The court is to start with the eight corners test by looking at the complaint and looking at the policy. But they're not limited to that. They can go beyond that and consider extraneous information that influences the court's decision. Is there a time frame relative to the extraneous information and also the source of that extraneous information? No. And that you put your finger right on the problem that we have with Judge Doherty's decision. Because when he struck the Koopman affidavit, he said, I can't consider now what he can didn't get to consider that when it decided it had no defense obligation. But there is no test in Illinois law that says the court has to put on blinders when determining a defense obligation and only consider what the insurance company knew when it rejected the tender. I thought that's what the true but unpleaded facts doctrine was, that the court could consider true but unpleaded facts that the insurance company was aware of. Your Honor, I respectfully disagree that that's the case because the case law that I cite in our opening brief lays out a number of examples of evidence that the court may consider in weighing a duty to defend issue that comes out only after the insurance company rejects the tender. That the insurance company had no idea about. That the insurance company had no idea about. What cases are you talking about? Because the ones I'm thinking of, there's pleadings and counterclaims and things that the court, I believe, felt the insurance company would have been aware of. Well, that's well after they rejected the duty to defend. Because, you know, the narrative of how this comes about typically is a party gets sued. They tender to their insurance carrier. They decide there's no coverage. Then the insurer comes to court seeking a declaration that there is an obligation to defend. And in support of that, they'll bring subsequently filed pleadings, third-party pleadings, that sort of thing. Affidavits, photographs, stuff that comes about later on after the insurance company already said, sorry, no coverage. And cases that support that include the Envirodyne case of the 1st District 1983, quote, we see no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a party during a motion for summary judgment and a declaratory action. Also, the Wilson case under the Supreme Court. It is clear to this court that if an insurance company has a right to present evidence beyond the complaint in the underlying lawsuit to show that it has no duty, then the insurer has the same right to present evidence to show that there is a duty. American Economy v. Hullabard and Root. Consideration of a third-party complaint in determining a duty to defend is in line with the general rule that a trial court may consider evidence beyond the underlying complaint. Is the standard of review relative to the denial of admission into consideration by the trial court of abuse of discretion, or is that a question of law? De novo review? I believe it's de novo review, Your Honor. I believe all the issues before you today are de novo review. That's the problem with the trial court's order, is it came up with this rule from thin air that I don't get to look at this stuff because they didn't get to look at it when they decided there was no coverage. But there's no such rule. I challenge the courts to identify anywhere in the precedent that a trial court must put on blinders and take sort of a snapshot of the knowledge of the insurance company at the time it rejected the tender, because then the insured is forever locked into whatever the insurance company knew then, and it can never present any additional evidence. It can never help to flesh out confused or ambiguous pleadings by introducing affidavits. If the additional evidence is what is held within the knowledge of the insured, how is that fair to then impute that to the insurance company after they deny the tender? Here we have this Koopman affidavit, the facts that presumably Koopman knew when they were tendering the defense to the insurance company. Well, it's not imputing that knowledge to the insurance company. It's just giving them that knowledge. The insurance company has an ongoing obligation to consider this information. But giving it to them after the case is over, and they haven't been able to do anything with the defense. I mean, they deny the tender, and then they just sit back and say, we don't have to do anything on this. Then the case moves forward, and it goes to its completion, as it did in this case. And they've had no input whatsoever into the case. And then later, these affidavits start flying on the declaratory judgment action. Well, consider, for example, they deny the defense, the case moves forward, and the pleadings get amended. Even after the trial, at the conclusion of the trial, the pleadings get amended to conform to the proofs that came out at trial. Even at that point, that's new evidence that's coming in. That could weigh on the insurance company's obligation to pay for those defense fees. For example, in this case, if we were unsuccessful in getting the underlying case thrown out on a dispositive motion, and it went forward, and subsequent pleadings came out that amended it, that included counts for trade secrets or trespass or copyright or any of these things that could trigger coverage under the policy, the insurer would have every right to tender that amended complaint to peek in and say, take a look at this. Is there a duty to defend not? That is an ongoing obligation that the insurance company has to its insurer. The insurer has the contractual rights to get a defense. You're saying that until the contract is terminated, there's still ongoing rights and duties and privileges? Absolutely. Absolutely. And there's nothing in the case law that says a court can lift the insurance company out of its contractual obligation to provide a defense by disregarding evidence that there is a duty to defend. By looking back in time at what they knew when they rejected the initial tender. There is no such rule of law. And that's why I believe the order which granted the motion to strike a recruitment affidavit was adopted. Was the testimony in the affidavit the equivalent of crucial issues that the trial court shouldn't be determining for purposes of determining whether or not insurance coverage should or shouldn't be or the right to defend? No, not in this case because the underlying complaint had been dismissed at that point. So it wasn't as if the trial court's consideration of this information would somehow prejudice the underlying case. The underlying case was gone. So there was no opportunity. How was it gone? By settlement or by? Dismissal. We defended the case. We got it dismissed on a dispositive motion, but not until we had spent hundreds of thousands of dollars in defending our clients. Was it a 615 or 619? Your Honor, I'm not 100% on that. I'd have to look at the record. Was it a motion for summary judgment? No. Which would be a dismissal? Well, it could be. It would be. Let's go with that. I believe it was a motion to dismiss under 2615 or 2619. I'm not 100% on which one it was. How does this affidavit play into the notice requirement under the policy provisions? I mean, isn't there a notice requirement? If Koopman, as an insurer, has these facts, isn't he required under the notice provision to give these facts as soon as practicable to the insurance company? I believe that there's probably an obligation in the policy to cooperate with the insurance company in investigating the facts. But I don't believe there's any suggestion that my clients didn't do that. Regardless of the non-admission of the affidavit, don't you claim that there's coverage anyway? Yes. Yes. Are you abandoning that claim? No. No, I think that there's a pitch for coverage regardless of the affidavit. I think the case for coverage is much stronger with the affidavit. And, as a matter of fact, Judge Doherty's opinion said the affidavit may well have facts in it that would influence this outcome. But I'm not going to consider it, because I can't consider now that they didn't consider that. I think that's where he went wrong. I think this case would be much easier for you to affirm the trial court's decision if you would have said, all right, I'll look at the affidavit, but I'm still going to rule that there's no coverage. We might not be here today if that was the case. But because he struck it, I think that the case has to be remanded at least to allow him to consider that affidavit before ruling on the cross-motion for summary charges. If relevant material, would the judgment of dismissal have any bearing and be material and admissible in this proceeding to determine whether or not there was a duty to defend? I'm not sure I follow, Your Honor. Well, we're talking about pleadings and the four corners of the pleadings. And if you got the complaint dismissed, then the rationale for the dismissal might have some bearing on what some other court determined what was within the four corners of the original complaint, which might have a bearing on whether or not this particular judge's interpretation is consistent with that one. And if it's not consistent with that one, then maybe there's a reasonable argument that maybe there's coverage based upon what another judge determined in dismissing the lawsuit. I think that's fair. That could have been considered. I'm not so concerned with fairness as logic, I think, maybe. Does it seem logical or not? It does seem logical. Okay. Any other questions? One other question. You're not arguing that the Wilson case did away with the true but unpleaded facts doctrine. That's still in place in Illinois, correct? Yes. Okay. Thank you. We have an opportunity for rebuttal. Thank you very much. Good morning, Your Honors. Good morning. May it please the Court, Counsel for Pekin Insurance Company, the plaintiff at the league, Robert Shummers. Your Honor has asked a lot of questions. Counsel, can I ask you a question? Were you here on a case involving environmental problems where maybe you weren't? Yes, I was. You were. It was in October. You decided the case, I think, six days after the oral argument. Okay. That was Pekin v. Farnes. Farnes. The Supreme Court did not veto. I just wanted to recollect to see if you are the person that you look like. Yes. In fact, I was also the person that argued the probably leading case in Illinois on the true but unpleaded facts doctrine in front of Your Honor, Justice McLaren, back in April of 2001. Wilson didn't do away with that, Justice Burke. It is still good law. And the concept of true but unpleaded facts has no application to this case, and a panel of this Court 11 years ago said so because in this case, the so-called true but unpleaded facts are supplied entirely by the insured and no contention by Koopman or his lawyers anywhere that Pekin was ever aware of what Koopman claims somehow clears up the ambiguities in an amended complaint. This Court made it clear that we do not believe that the doctrine was meant to be applied to situations such as existed in this case. That is, the only extraneous facts the insurer possessed were supplied by the insured. That said, 323, you'll have a third at 251, Justice Bowman wrote for the Court. In other words, if the true but unpleaded facts were discovered by the insurer during investigation, that's different because this Court says... I said insured, I thought... By the insurer during its investigation. Because that's what this Court says typically is when the doctrine should apply. This Court said the duty to defend is determined by comparing the allegations alleged in a complaint and determine if they are within or potentially within the scope of the policy or look at the true but unpleaded facts possessed by the insurer and taken together with the allegations of fact, determine if those allegations of fact are within or potentially within the scope of the policy. In the time frame on that, it could be either before the decision to refuse the tender or after. It could be. Okay. That's the doctrine of true but unpleaded facts. That doctrine doesn't apply here. Affidavits submitted by a defendant who was also an insured to a trial judge saying, let me clear up the ambiguities in a complaint, as you said, Justice McLaren, are improper. It was properly struck. Just as they could not have submitted an affidavit from a law professor saying, I read contracts, I'm a law professor, I wrote the book, I can tell you what that policy means. You can't have expert opinion on what the policy means and you should not have opinion from a party as to what the pleader meant in his complaint. Plus, neither the original complaint nor the amended complaint filed against these insured defendants was lacking in detail. What it lacked, what it lacked were facts which triggered any obligation on the part of Beacon Insurance. And you can't submit those facts by way of affidavit. I think a law school professor would call that the type of reasoning applied by the defendants post hoc ergo proctor hoc. After this, therefore, because of this. In other words, if you knew then what we know now, you'd look at this differently. Except, look at Koopman's affidavit. He doesn't say anything wrong was done. He doesn't say anything that was done by the, that the plaintiff's claim was allegedly done by the defendants in a wrongful manner. Judge Daugherty, in his opinion, so stated. Well, doesn't the affidavit say, though, that they basically took the entire advertising scheme from X-Actos and just slapped Precision Dose's name on it? Well, in so many words, except they owned it. They bought all of the assets. I mean, the directors that were sued by the shareholder derivative plaintiffs bought the assets of X-Actos, which included, as the trial court said, all of their intellectual property. But the allegations in the complaint are they bought it under kind of false pretenses. I mean, if you read that broadly. Right. They bought it, and they owned it, and they used it. But it's not said they used it in a wrongful manner. This case, Eisenman, if you look at it from the standpoint of traditional coverage analysis, this is a round peg in a square hole. The typical analysis is do the facts alleged fall within or potentially within the policy? Potentially within isn't some fanciful set of hypothetical facts. In fact, this court a few years ago in the Allianz case, which was the third time it was in front of this court, made a comment that, quote, hypothetical factual situations are simply irrelevant. 387.113.1030. And what we have here is a complete hypothetical factual situation. The allegations by the plaintiffs in the original complaint or the amended complaint do not plead coverage. There is no doubt. There is no claim of bodily injury. There is no claim of property damage. There is no claim of personal injury. Personal injury is a set of intentional torts, false arrest, detention or imprisonment? No. Malicious prosecution? No. Wrongful eviction? No plaintiff said he was kicked out of some place he had a right to be. Let me stop you right there. Getting away from the Coopman affidavit and just focusing on what you just said about the wrongful eviction as a personal injury under the policy. Again, we're going to read this complaint as a whole and we're to read it broadly supporting coverage, correct? Well, you read it liberally and you read it to determine if the allegations are within or potentially within. But it's the actual allegations, not the hypothetical version the defense has so cleverly and imaginatively provided. Let me ask you if this is an actual allegation or a hypothetical allegation. The amended complaint, does it or does it not allege that there was a breach of fiduciary duties that allowed the defendants to take over the physical plant and unjustly profit thereby? Yes. So why is that not wrongful eviction as a personal injury under the policy? Who did they throw out? And if they took it over, they took it over as the owner. They threw out exactos and the minority shareholders of exactos. The complaint seeks damages for diversion of profits that the plaintiff's claim should have gone to exactos, which is not a wrongful eviction. I don't think you can look at a snippet of an allegation and say that's what this lawsuit was all about. This lawsuit was not about that. This lawsuit was about shareholders who had 24 percent of the stock, assuming directors and the other shareholders who had 76 percent, because they didn't like what they did with respect to what they regarded as opportunities that belonged to exactos. It's not a case of wrongful eviction. It's not a case of invasion of privacy. It's not a case of any of these offenses which fit within the coverage grants of the policy. The policy would cover personal injury had it been alleged or advertising injury. Are you saying that the allegation of wrongful eviction does not approximately cause or could not approximately cause the damages that they were seeking? Well, I don't see an allegation, Your Honor, of wrongful eviction. And I was looking for one Justice Burke mentioned earlier. I'm looking at the complaint, the amended complaint here. And I don't see it. Well, even if there were a wrongful eviction, how would that relate to the damages that they were seeking? Well, they weren't seeking damages for wrongful eviction. They were seeking damages for, well, a constructive trust on the profits that any one of the three directors received as a result of the wrongful conduct. The wrongful conduct was the never accounting for $1.4 million the corporation was going to receive from their purchase of exactos' assets, the winding up activities, the negotiation that led to a substantial reduction of debt, which was never disbursed to the others, and that, of course, they alleged that Darnell, Kline, Hines, and Koopman, as shareholders, had a duty of loyalty, good faith, and honesty. That's what the case is about. The case is not a tort case. It would take imagination, speculation, and a different set of facts to make this fit within the scope of the insurance policy, and that's not even potentially covered. That's beyond, way beyond potentially covered. We know the duty to defend is broader than the duty to identify. However, it's not an unlimited duty. It is based on the allegations of a complaint. Well, if there's an allegation about eviction, even if they weren't in possession, would that not hypothetically or potentially be within the coverage of the policy? Hypothetically and hypothetically as potentially no. And why is that? Well, because it's hypothetical. It's not an alleged fact. And I still, I don't see the allegation, but. Are you saying that they didn't allege that they were in possession, so therefore they couldn't be evicted? Well, the plaintiffs don't allege they were in possession of anything. Are you arguing that unlawful eviction is a legal conclusion and it's not a factual statement? If there, well, you need an allegation of unlawful eviction. There isn't one. I just, I can't find it here. Koopman doesn't talk about it. Koopman talks about advertisement. And Koopman talks about advertisement, but he doesn't state, and the trial court correctly noted, he doesn't state or allege or contend that Beacon was aware of anything he's opining about. And what counsel said is his attempt to clean up the ambiguities of a complaint, which is not what an affidavit is designed to do. I think Your Honor referred to it as a problem with the philosophical approach. And sure, it's a problem because the duty to defend is determined by an analysis of the allegations of a complaint when read in the light of the insurance agreement of an insurance policy. We can't add to it and to determine if those allegations are within or potentially within the scope of the policy. To adopt the defendant's view of the insurance defense calculus would require this court to opine in a decision that the duty to defend is determined by analyzing the allegations of fact and whether they are within, potentially within, or could be in, if somebody amended the complaint to include them. Counsel said that if there had been a trial and the evidence was such that there was an amendment to conform to the proof, they could tender that to the insurance company. Well, sure, any amended complaint could be tendered. But you're tendering a complaint. You're not tendering a pleading saying, oh, by the way, here's an affidavit that explains it. It really was. What did Judge Doherty say about this? Judge Doherty took the position that Pekin Insurance Company can't be settled with facts that go to the duty to defend analysis, which they were not aware of. And the Koopman affidavit, which is the source of those facts, does not state that Pekin was aware of those facts. But those facts go to the advertisement. So what was his finding relative to the eviction, which the Koopman affidavit didn't go to? He found that there was no personal injury. There was no advertising injury. Personal injury, wrongful invasion of right of privacy, page six of the court's ruling. This argument is founded on the contention that the amended underlying complaint alleges wrongful assumption of the operations of the former corporation. For the same reasons stated above, the court rejects this contention. And the reason stated above is that there was nothing alleged to have been wrongful by the conduct of the defendants. And that was what he, as he stated here, for the same reasons stated above, the court rejects this contention. Let's see if I can find the exact quote that the trial court had earlier. Yes, page five, last paragraph on the page. Quote, it is absolutely clear that the amended underlying complaint does not allege that the assumption of operations by Precision Dose was wrongful. There is nothing alleged here to suggest that Precision Dose's commencement of operations constitutes a misappropriation of anything, period, close quote. Why would they ask him for constructive trust on profits, though? I mean, the profits they derived were from the operations of this factory. That's what they're alleging. Right. And you can answer the question. A constructive trust on profits would not be bodily injury, property damage, personal, any offense that is defined as personal injury, or any offense that's defined as advertising injury. They did not have what could provide the coverage for a claim like this, directors and officers' liability coverage, because they were directors and officers. And there is insurance that covers people like that who do things like was alleged here. That's why I said this is a round peg in a square hole. They didn't buy that type of policy. They can't make this policy that type of policy. And the allegations just aren't there. So for all those reasons, Your Honor, for these honors, I would respectfully ask this court to affirm the judgment of the Supreme Court. Thank you. Thank you. Are there any other questions? Thank you. Mr. Hattori. Thank you, Judge. I'd like to quote the language of the Pekin policy under personal injury. Specifically with regard to the wrongful eviction issue. It's not just wrongful eviction that's covered. It says it has covered the wrongful eviction from or the wrongful entry into or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. Assuming the operations of a company that you bought by fraud is inherently the wrongful entry into that facility. If I offered to buy your house for $100,000 and only gave you five, and then I occupied your house, and you sued me for fraud, and you said in that pleading he wrongfully occupied the house after having defrauded me in the sale, that would also constitute the wrongful entry into the private occupancy of a room, dwelling, or premises. I think the problem is, and what the trial judge focused on, was the allegation in paragraph 14 of the amended complaint that says precision dose began assuming operations of the exact dose packaging factory. And if perhaps that complaint had said precision dose wrongfully began assuming operations, it wouldn't have been covered. I mean, that's what I'm kind of reading into the trial court's decision. And I think you're absolutely right. I think that the trial court too narrowly construed this against the insured when the standard provides for the opposite. The standard is that the trial court is defined a duty to defend whenever there are facts that are potentially within coverage. Potentially within coverage. The law is, unless the policy cannot possibly cover liability from the facts alleged, not the legal theories of the counts pled, but from the facts, and unless the terms of the policy clearly preclude coverage under all the facts consistent with the facts pled, there's a duty to defend. It's a very pro-insured standard. And that's why we think Judge Dorey got it wrong, because he didn't give us that benefit of the thumb on the scale in favor of coverage, which we were entitled to. It would appear that what the damages that were approximately caused were not based upon wrongful eviction, but were based upon wrongful expropriation or failure to distribute the $1.4 million that the plaintiffs claimed that they should have received the distribution, because supposedly your clients reduced the outstanding debt that they ended up having to pay by 80%. If this were just a breach of fiduciary duty case and it didn't have any greater implications from the facts pled, then the prayer for relief would have been give us the value of the company, the difference between what it was sold for and what it should have been sold for, having known all the facts. That would have been their measure of damages. Instead, they said give us a constructive trust on everything this company has basically made since it was sold fraudulently. It was, as you said, there were fraudulent pretenses in the sale, and everything after that was done unlawfully, just like if I bought your house for $5,000 instead of the $100,000 we agreed to, and then I went and resold it or I went and leased it or I went and did anything else with it, all of that subsequent conduct would be lawful. But based upon your hypothetical, I don't think that if I had committed acts of fraud that I was evicting you, it would sound to me like you willingly left. To me, eviction is, as the classical phrase, it's a forcible entry or a detainer. And according to your fraud claim, I'm not forcing you to do anything with violence and force of arms. You're doing this in your own volition. So to me, it's not an eviction. The whole theory behind forcible entry and detainer was we're not going to allow people to use self-help to evict people. It doesn't have to be wrongful eviction to be covered. It can be a wrongful entry into the property. If I bought your house for $5,000 instead of $100,000 and I entered it, I wrongfully entered it because I had no right to do that. I converted your property. I did not give you the benefit that we had agreed to, and so I had no right to occupy it. That's covered. Okay, I don't have any other questions for you folks. Thank you very much. We'll take the case under advisement. We have other cases on the call. There will be a short recess. Thank you very much. Thank you.